## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

---------------------------------------------------------- x

| | |
|---|---|
| *In re:* : | |
| : | **Chapter 11** |
| : | |
| **SOUTHEASTERN GROCERS, LLC,** *et al.* : | **Case No. 18– _____ (      )** |
| : | |
| Debtors.[1] : | **(Joint Administration Requested)** |
| : | |

---------------------------------------------------------- x

### MOTION OF DEBTORS PURSUANT TO 11 U.S.C.
### §§ 105, 363, AND 365 AND FED. R. BANKR. P. 2002, 6004, AND
### 6006 FOR APPROVAL OF DISCRETE LEASE SALE PROCEDURES

Southeastern Grocers, LLC ("**SEG**") and its affiliated debtors in the above-caption chapter 11 cases, as debtors and debtors in possession (collectively, the "**Debtors**"), respectfully represent as follows in support of this motion (the "**Motion**")[2]:

### Preliminary Statement

1.    A key component of the Debtors' financial and operational restructuring strategy is rationalizing the Debtors' store footprint by closing and/or selling unprofitable stores. To that end, prior to the commencement of these chapter 11 cases, the Debtors' management

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Southeastern Grocers, LLC (5190); ARP Ballentine LLC (6936); ARP Chickamauga LLC (9515); ARP Hartsville LLC (7906); ARP James Island LLC (9163); ARP Moonville LLC (0930); ARP Morganton LLC (4010); ARP Winston Salem LLC (2540); BI-LO Finance Corp. (0498); BI-LO Holding Finance, Inc. (9227); BI-LO Holding Finance, LLC (1412); BI-LO Holding, LLC (5611); BI-LO, LLC (0130); Dixie Spirits Florida, LLC (6727); Dixie Spirits, Inc. (2359); Opal Holdings, LLC (2667); Samson Merger Sub, LLC (4402); Winn-Dixie Logistics, LLC (2949); Winn-Dixie Montgomery Leasing, LLC (6899); Winn-Dixie Montgomery, LLC (2119); Winn-Dixie Properties, LLC (7105); Winn-Dixie Raleigh Leasing, LLC (6812); Winn-Dixie Raleigh, LLC (0665); Winn-Dixie Stores, Inc. (4290); Winn-Dixie Stores Leasing, LLC (7019); Winn-Dixie Supermarkets, Inc. (8837); and Winn-Dixie Warehouse Leasing, LLC (6709). The Debtors' mailing address is 8928 Prominence Parkway, #200, Jacksonville, Florida 32256.

[2] In support of the Motion, the Debtors submit the *Declaration of Stephen Goldstein in Support of Motion of Debtors Pursuant to 11 U.S.C. §§ 105, 363, and 365 and Fed. R. Bankr. P. 2002, 6004, and 6005 For Approval of Discrete Lease Sale Procedures*, sworn to on the date hereof (the "**Goldstein Declaration**"), which has been filed with the Court contemporaneously herewith and is incorporated by reference herein.

team and advisors undertook an extensive review of the Debtors' store portfolio to gauge each store's overall performance, profitability, and the opportunity for rationalization. The Debtors and their advisors utilized their findings to develop and implement a process to rehabilitate or otherwise maximize the value of any non-profitable or underperforming stores for the benefit of the Debtors' stakeholders.

2.      Specifically, the Debtors and their advisors commenced a comprehensive effort to renegotiate burdensome leases, and simultaneously conducted an extensive prepetition marketing and sales process to sell as many of the underperforming stores as possible on a going concern basis (the "**Prepetition Marketing and Sale Process**"). The Debtors also developed streamlined procedures (the "**Store Closing Procedures**," and the related liquidation process, the "**Store Closing Process**") for the orderly wind-down and liquidation of any underperforming stores (the "**Closing Stores**") whose leases could not be mitigated sufficiently or for which no firm offers were obtained or likely available from third-parties. In anticipation of the condensed timeline for these prepackaged chapter 11 cases, the Debtors commenced the Store Closing Process on or around March 15, 2018 to mitigate administrative costs associated with the Closing Stores.

3.      In addition, prior to the Petition Date, the Debtors negotiated and executed twenty-one (21) separate lease sale agreements for the sale of thirty-nine (39) underperforming stores for aggregate cash consideration of approximately $14.8 million, plus additional cash consideration for inventory at the applicable closings. One transaction for the sale of six (6) stores was consummated prior to the Petition Date. Twenty (20) of the lease sale agreements (the "**Lease Sale Agreements**") that govern the sale of thirty-three (33) underperforming stores (collectively, the "**Sold Stores**") for aggregate cash consideration of approximately $13.4

million, plus additional cash consideration for certain inventory, have not yet closed.[3]  A list of the Sold Stores is attached hereto as **Exhibit A**.  The Debtors intend to continue their marketing and sale process after the Petition Date (the "**Underperforming Store Sale Process**") with respect to the Debtors' remaining underperforming stores whose associated leases are currently contemplated to be rejected pursuant to the Prepackaged Plan or expire shortly after the Debtors' emergence from chapter 11 unless an alternative transaction can be achieved (including certain leases and related assets, the "**Remaining Stores**" and, together with the Sold Stores, the "**Underperforming Stores**").

4.      It would be advantageous to sell the Underperforming Stores as opposed to rejecting the leases associated with such stores and incurring rejection damages in connection therewith, which claims are unimpaired under the Prepackaged Plan.  Indeed, the Debtors estimate that, in addition to receiving cash consideration, selling the Sold Stores will save the Debtors more than $4 million through avoidance of potential lease rejection damages claims. The Debtors intend to continue to market the Remaining Stores and execute transactions for sales of such stores to try to realize similar savings.  Given the prepackaged nature of these cases and the condensed timeline, the Debtors require expedited procedures to allow them to quickly execute and close sales of the Underperforming Stores to maximize the value of such stores.

5.      Specifically, the Debtors seek approval of omnibus procedures (the "**Discrete Lease Sale Procedures**") authorizing them to solicit proposals and negotiate and consummate transactions for the highest and best offers for any Underperforming Stores, all while giving parties in interest and the Court an adequate opportunity to review and consider

---

[3] Only one Lease Sale Agreement provides for the Debtors to receive aggregate cash consideration and additional consideration for inventory in excess of $3 million.  Specifically, the Lease Sale Agreement with Brookshire Grocery Company provides for the Debtors to receive aggregate cash consideration of $8.5 million plus inventory costs.

proposed transactions.  Generally, if the Debtors achieve a transaction for the Remaining Stores, the Debtors will file and serve a notice on the Court docket summarizing the material terms of the transaction (in the form of notice attached to the Proposed Order as **Exhibit 1**) and attach the relevant transaction documents.  Parties in interest will have seven (7) days to respond to the notice.  If no objection is timely filed, the transaction will be deemed approved (or the Debtors will submit an order to the Court under certificate of counsel).  If an objection is filed and cannot be resolved, the Debtors will schedule a hearing with the Court.  These procedures will also apply to the Sold Stores.[4]

6.      In light of the number of Underperforming Stores that the Debtors are seeking to monetize as part of the Underperforming Store Sale Process and the anticipated compressed timeline to secure court approval of such sale transactions during these chapter 11 cases, the Debtors submit that the relief requested should be approved as a reasonable exercise of the Debtors' business judgment.  The Debtors have reviewed this Motion and the Discrete Lease Sale Procedures with the Initial Consenting Noteholders (as defined below) who are supportive of the relief requested, and have also consented to the sales of the Sold Stores.

**Background**

7.      On the date hereof (the "**Petition Date**"), the Debtors each commenced with this Court a voluntary case under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**").  The Debtors are authorized to continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the

---

[4] A schedule of the material terms of the Lease Sale Agreements for the Sold Stores is attached hereto as **Exhibit B**. The Debtors also intend to file a Sale Notice (as defined below) in accordance with the Discrete Lease Sale Procedures with respect to each Lease Sale Transaction associated with the applicable Lease Sale Agreements.

Bankruptcy Code.  No trustee, examiner, or statutory committee of creditors has been appointed in these chapter 11 cases.

8.      Contemporaneously herewith, the Debtors have filed a motion requesting joint administration of their chapter 11 cases pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

9.      On March 15, 2018, the Debtors executed a restructuring support agreement (the "**Restructuring Support Agreement**") with (a) holders of approximately eighty percent (80%) of the outstanding principal amount of the Debtors' 8.625%/9.375% Senior PIK Toggle Notes due 2018 (collectively, the "**Unsecured Notes**"), of which approximately 68% are held or controlled by the members of an ad hoc group (the "**Initial Consenting Noteholders**") and approximately 12% are held or controlled by LSF7 Bond Holdings Ltd. (together with the Initial Consenting Noteholders, the "**Consenting Parties**"), and (b) the prepetition equity sponsors (the "**Sponsors**"), which own or control in excess of ninety-nine percent (99%) of the prepetition equity in SEG (which directly or indirectly owns or controls one hundred percent (100%) of the prepetition equity in the other Debtors).  Pursuant to the Restructuring Support Agreement, the Consenting Parties and the Sponsors agreed to vote in favor of and support confirmation of the *Joint Prepackaged Chapter 11 Plan of Reorganization of Southeastern Grocers, LLC and Its Affiliated Debtors* (the "**Prepackaged Plan**")[5] that, upon implementation, provides for the Debtors to emerge from these chapter 11 cases substantially de-levered with overall debt levels decreased by over $500 million.

10.     The Prepackaged Plan provides for a restructuring transaction pursuant to which:

---

[5] Capitalized terms used herein but not otherwise defined shall have the meanings ascribed to them in the Prepackaged Plan or the Carney Declaration (as defined below).

▪ Each holder of an Allowed ABL Facility Claim will receive Cash in the full amount of its Allowed ABL Facility Claim from the proceeds of the Exit ABL Facility, and all existing commitments under the ABL Credit Agreement will be terminated.

▪ Each holder of an Allowed Secured Notes Claim will receive Cash in the full amount of its Allowed Secured Notes Claim, from the proceeds of the Exit Term Loan Facility, and the Secured Notes will be cancelled.

▪ Each holder of an Allowed Unsecured Notes Claim will receive its pro rata share of one hundred percent (100%) of the New Common Stock issued pursuant to the Prepackaged Plan and outstanding immediately following the Effective Date, which will be subject to dilution only by (a) the New Common Stock issued (i) upon the exercise of the Warrant and (ii) pursuant to the Management Incentive Plan, and (b) other New Common Stock duly authorized and issued in accordance with the terms of Reorganized SEG's Amended Organizational Documents, and the Unsecured Notes will be cancelled.

▪ All Priority Non-Tax Claims, Other Secured Claims, General Unsecured Claims, Intercompany Claims, and Intercompany Interests are unimpaired by the Prepackaged Plan and will be satisfied in full in the ordinary course of business.

▪ SEG Parent will receive a 5% Warrant in full and final satisfaction, settlement, release, cancellation, and discharge of, and in exchange for, its Allowed Existing SEG Equity Interests.

11.    Prior to the Petition Date, on March 15, 2018, the Debtors commenced the solicitation of votes of impaired creditors and interest holders on the Prepackaged Plan through the *Disclosure Statement for Joint Prepackaged Chapter 11 Plan of Reorganization of Southeastern Grocers, LLC and Its Affiliated Debtors* (the "**Disclosure Statement**"), filed contemporaneously herewith.   The Prepackaged Plan has received overwhelming support. Specifically, as of the Petition Date, the Debtors already have received acceptances of the Prepackaged Plan from holders of Claims in Class 5 (Unsecured Notes Claims) that in the aggregate hold or control approximately 68% in amount of all Unsecured Notes, and holders of more than 99% of all Interests in Class 8 (Existing SEG Equity Interests), the only Impaired Classes entitled to vote under the Prepackaged Plan.

12.     The solicitation period for the Prepackaged Plan will remain open until April 5, 2018.  The Debtors have requested a joint hearing for confirmation of the Prepackaged Plan and approval of the Disclosure Statement to be held within forty-five (45) days of the Petition Date (the "**Confirmation Hearing**").

13.     Additional information regarding the Debtors' business, capital structure, and the circumstances leading to the commencement of these chapter 11 cases is set forth in the *Declaration of Brian P. Carney in Support of the Debtors' Chapter 11 Petitions and First Day Relief* (the "**Carney Declaration**"), which has been filed with the Court contemporaneously herewith and is incorporated herein by reference, and the Disclosure Statement.

## Jurisdiction

14.     The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

15.     Pursuant to Rule 9013–1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), the Debtors consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## Relief Requested

16.     By this Motion, pursuant to sections 105(a), 363, and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, and 6006, and Local Rules 2002-1 and 6004-1,

the Debtors request entry of an order approving the Discrete Lease Sale Procedures (as described below). A proposed form of order granting the relief requested in this Motion is annexed hereto as **Exhibit C** (the "**Proposed Order**").

## Marketing and Sale Process

17.     The Debtors' pursuit of sale transactions with respect to the Underperforming Stores began with the help of their investment banker, Evercore Group, L.L.C. ("**Evercore**"), in the fourth quarter of 2017, following a thorough diligence process and evaluation of all options available to the Debtors to satisfy their fiduciary obligations. In December 2017, Evercore and the Debtors contacted eight (8) potential strategic buyers who were already familiar with the Debtors' business and footprint and who had previously expressed interest in certain of the Debtors stores (the "**Phase I Buyers**"). In January 2018, the Debtors and Evercore contacted fifteen (15) additional strategic buyers, including eight (8) retailers and seven (7) wholesalers (the "**Phase II Buyers**"). With the Debtors' approval, these wholesalers collectively reached out to a broad group of over fifty (50) of their respective local grocery operators.

18.     Parties that executed confidentiality agreements or joinders thereto were provided detailed confidential information about the Underperforming Stores and communicated with Evercore with respect to preliminary diligence questions. As a result of Evercore's marketing efforts, the Debtors' received formal indications of interest from four (4) Phase I Buyers by the end of January 2018, and formal indications of interest from eight (8) Phase II Buyers by the end of February 2018. Where potential purchasers submitted competing bids for any of the Underperforming Stores, the Debtors and Evercore analyzed, among other things: (a) the consideration offered by each potential buyer; (b) assets to be acquired, liabilities to be

assumed, and proposed treatment of and effect on labor; and (c) execution risk.  The Debtors also consulted with the advisors to the Initial Consenting Noteholders.

19.     After extensive deliberations with their advisors and several rounds of negotiations with the Phase I Buyers, the Debtors executed lease sale agreements with two (2) Phase I Buyers for the sale of sixteen (16) Underperforming Stores for aggregate cash consideration of $10.2 million, plus additional cash consideration for inventory.  Similarly, after multiple rounds of negotiations with the Phase II Buyers, the Debtors executed additional lease sale agreements with five (5) Phase II Buyers for the sale of twenty-three (23) Underperforming Stores for aggregate cash consideration of $4.7 million, plus additional cash consideration for inventory.  Importantly, these transactions also avoid claims that the Debtors would have incurred upon rejecting such leases, which is the only other alternative for the Underperforming Stores.

20.     The Debtors are currently in advanced negotiations with three (3) potential purchasers who have submitted formal indications of interest, and have continued to receive informal indications of interest since the public announcement of the Restructuring Support Agreement.  The Debtors expect market interest in the Underperforming Stores to continue after the Petition Date in connection with the Underperforming Store Sale Process.  In addition, the Debtors will continue to reach out to a number of other potential interested parties, including additional grocery and non-grocery retailers, as well as landlords, real estate investors, and brokers, via direct emails and phone calls, to attempt to maximize the value of the Underperforming Stores.

21.     As described in greater detail below, the Discrete Lease Sale Procedures are designed to allow the Debtors the flexibility to structure each transaction in the manner most

likely to maximize value for the Debtors' estates, within the compressed timeline of these prepackaged chapter 11 cases. At the same time, the procedures provide interested parties sufficient notice to bid and an opportunity to object where their interests may be affected.

### Discrete Lease Sale Procedures

22.     The proposed terms of the Discrete Lease Sale Procedures are as follows:

a.     <u>Interested Buyers</u>.    Parties interested in purchasing or learning more about the Underperforming Stores should contact Stephen R. Goldstein (stephen.goldstein@evercore.com) or Elliot A. Ross (elliot.ross@evercore.com) of Evercore Group L.L.C. The Debtors may require execution of a confidentiality agreement in form and substance satisfactory to the Debtors before sharing confidential information regarding the Underperforming Stores

b.     <u>Debtor Notice Parties</u>.   For purposes of the Discrete Lease Sale Procedures, the "**Debtor Notice Parties**" are: (i) Southeastern Grocers, LLC, 8928 Prominence Parkway, #200, Jacksonville, FL 32256 (Attn: M. Sandlin Grimm, Esq.); (ii) proposed counsel to the Debtors, (a) Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 (Attn: Ray C. Schrock, P.C., Matthew S. Barr, Esq., and Sunny Singh, Esq.), and (b) Richards, Layton & Finger, P.A., One Rodney Square, 920 North King Street, Wilmington, Delaware, 19801 (Attn: Daniel J. DeFranceschi, Esq., Paul N. Heath, Esq., and Amanda R. Steele, Esq.); and (iii) Evercore Group L.L.C., 55 East 52nd Street, New York, NY 10055 (Attn: Stephen R. Goldstein and Elliot A. Ross).

c.     <u>Sale Notice Parties</u>. For purposes of the Discrete Lease Sale Procedures, the "**Sale Notice Parties**" are: (i) the Office of the United States Trustee for the District of Delaware; (ii) counsel to the Initial Consenting Noteholders, (iii) counsel to the Consenting Lone Star Parties; (iv) counsel to the ABL Facility Agent and Deutsche Bank Securities Inc. in its capacity as Lead Arranger under the Exit Term Loan Facility; (v) counsel to the Exit ABL Facility Agent and the Exit Term Loan Facility Agent; (vii) counsel to the Secured Notes Trustee; (viii) counsel to the Unsecured Notes Trustee; (ix) counsel to Wells Fargo Bank, National Association, in its capacity as Treasury Bank; (x) counsel to the applicable purchaser; (xi) all entities known or reasonably believed by the Debtors to have asserted a lien, encumbrance, claim or other interest in any of the Underperforming Stores that are the subject of the proposed transaction (for whom identifying information and addresses are available to the Debtors); (xii) all non-

Debtor parties to any executory contracts or unexpired non-residential real property leases of the Debtors proposed to be assumed and assigned in connection with the Lease Sale Transaction (as defined below) (for whom identifying information and address are available to the Debtors); (xiii) all entities known by the Debtors to have expressed an interest to the Debtors in a transaction with respect to any of the relevant Underperforming Stores during the past twelve (12) months; (xiv) all environmental authorities having jurisdiction over any of the Underperforming Stores, including the Environmental Protection Agency and the Environmental and Natural Resources Division of the United States Department of Justice; and (xv) any party who has requested notice under Bankruptcy Rule 2002.

d.      Transaction Approval Procedures.

(1)      *Sale Notice*.  If, with respect to a private sale or disposition transaction in connection with one or more Underperforming Stores (a "**Lease Sale Transaction**") the aggregate cash consideration to be received by the Debtors is less than $15,000,000.00, the Debtors will file a notice of such Lease Sale Transaction (a "**Sale Notice**") with the Court, substantially in the form attached to the Proposed Order as **Exhibit 1**, and serve the Sale Notice on the Sale Notice Parties.  The Sale Notice will identify in reasonable detail: (a) the Remaining Assets to be sold and their location; (b) the purchaser; (c) the purchase price and other economic terms of the Lease Sale Transaction; (d) the existence of any liens, encumbrances, claims or other interests in the Remaining Assets to be sold; and (e) the procedures to object to the Lease Sale Transaction.  In addition, the Sale Notice will attach (i) the applicable lease sale agreement(s) in conformity with Local Rule 6004-1 and (ii) to the extent agreed upon by the Debtors, a separate form of order approving the applicable Lease Sale Transaction.

(2)      *Assumption and Assignment Information*.  If the Debtors propose to assume and assign an executory contract or unexpired lease in connection with a Lease Sale Transaction, the Sale Notice will also set forth the following information (the "**Assumption and Assignment Information**"), among other things:  (i) the executory contract or unexpired lease to be assumed and assigned; (ii) the name(s) and address(es) of each counterparty to such executory contract or unexpired lease; (iii) the proposed effective date of the assumption and assignment for such executory contract or unexpired lease, which date will be the effective date of the Lease Sale Transaction; (iv) the proposed cure amount, if any; (v) the name(s), address(es), phone number and email address of the proposed assignee(s) of such executory contract or unexpired lease; (vi) a certification of the Debtors that the assignee has

provided information to each affected counterparty of such executory contract or unexpired lease demonstrating the assignee's ability to comply with the requirements of adequate assurance of future performance under section 365(f)(2)(B) and, if applicable, section 365(b)(3) of the Bankruptcy Code, including, without limitation, the assignee's financial wherewithal and willingness to perform under such executory contract or unexpired lease (such information, the "**Adequate Assurance Information**"); and (vii) the deadlines and procedures for filing objections to the assumption and assignment of any executory contracts or unexpired leases in connection with the Lease Sale Transaction.

(3)    *Service of the Sale Notice and the Adequate Assurance Information*.  The Debtors will serve the Sale Notice on the Sale Notice Parties by email or facsimile (if email address or facsimile number is known; otherwise, by overnight mail).  In addition, the Debtors will cause to be served by email (if email address is known; otherwise, by overnight mail) on each non-Debtor counterparty to an executory contract or unexpired lease proposed to be assumed and assigned pursuant to the Lease Sale Transaction and their counsel of record, if any (collectively, the "**Cure Notice Parties**") the Adequate Assurance Information.  The Cure Notice Parties will review the Adequate Assurance Information on a confidential basis.  Any objection which discloses confidential, non-public Adequate Assurance Information must be filed under seal unless disclosure of such confidential, non-public information is authorized by the Debtors and the applicable assignee(s).  The order approving the Discrete Lease Sale Procedures will authorize the filing of any such objections under seal, and on the docket with such non-public information redacted, without further order of the Court; provided that unredacted versions of such objections will be served upon the Debtors and the Court.

(4)    *Objection Procedures*.    Parties objecting to a Lease Sale Transaction, including the proposed assumption and assignment of an executory contract or unexpired lease in connection therewith and/or the proposed cure amount, must file and serve a written objection so that such objection is filed with the Court and is actually received by the Debtor Notice Parties no later than seven (7) days after the date the Debtors serve the Sale Notice (the "**Objection Deadline**").

(5)    *Event of No Objection*.  If an objection is not timely filed and served by the Objection Deadline, then:

a.    with respect to the assumption and assignment of any executory contract or unexpired lease pursuant to the Lease

Sale Transaction, (i) the Debtors' proposed cure amount will be binding upon each non-Debtor party to such executory contract or unexpired lease for all purposes in the Debtors' chapter 11 cases and will constitute a final determination of the assumption and no additional cure amounts will be due; (ii) each non-Debtor party to such executory contract or unexpired lease will be deemed to have received adequate assurance of future performance; (iii) the effective date of such assumption and assignment will be the effective date of the applicable Lease Sale Transaction; (iv) any provisions in such executory contract or unexpired lease that prohibit or condition assignment thereof or, as a result of such assignment, allow the parties thereto to terminate, recapture, impose any penalty or fee, place a condition on renewal or extension, or modify any term or condition upon the assignment thereof, constitute unenforceable anti-assignment provisions that are void and of no force and effect with respect to the Lease Sale Transaction; (v) to the extent such executory contract or unexpired lease is actually assigned to the proposed assignee, in accordance with section 365 of the Bankruptcy Code, such assignee will be deemed to be substituted for the Debtors, and will be fully and irrevocably vested with all rights, title, and interest of the Debtors thereunder, and such executory contract or unexpired lease will be in full force and effect and enforceable in accordance with its respective terms; and (vi) pursuant to section 365(k) of the Bankruptcy Code, after the assignment by the Debtors of such executory contract or unexpired lease, the Debtors will have no liability for any breach thereof that occurs after such assignment; and

b.      such Lease Sale Transaction, including the assumption and assignment of any executory contract or unexpired lease in connection therewith, will be deemed final and fully authorized by the Court under the terms of the Order approving the Discrete Lease Sale Procedures, and no further notice or Court approval to consummate the Lease Sale Transaction or such assumption and assignment, will be required or necessary.

c.      Notwithstanding the foregoing, the Debtors may, in their discretion, agree to negotiate and submit a separate proposed order to the Court approving a specific Lease Sale Transaction.

    (6)    *Unresolved Objections*.   If any objections are timely filed and served by the Objection Deadline, the Debtors will try to negotiate a consensual resolution with the objecting parties.  If the Debtors are unable to consensually resolve all objections:

        **a.**    the objection will be deemed a request for a hearing on the Lease Sale Transaction and the Lease Sale Transaction will be considered at a hearing before the Court;

        **b.**    the Debtors may file a reply at least two (2) days before such hearing; and

        **c.**    the Lease Sale Transaction may not proceed absent (a) resolution of the objection or (b) entry of an order by the Court approving the Lease Sale Transaction.

    (7)    *Payment of Cure Amount*.   All undisputed cure amounts will be paid at the closing of the relevant Lease Sale Transaction.  Any disputed cure amount must be paid by the earlier of (i) when the Debtors and the non-Debtor counterparty agree to a cure amount (with the consent of the Initial Consenting Noteholders solely as to any cure payment that is not within the ordinary course and consistent with the Debtors' past practice, which consent shall not be unreasonably withheld) or (ii) within five (5) days after the date of the entry of a final order by the Court determining an amount.

    (8)    *Private Sales*.   The Debtors are permitted to sell the Underperforming Stores pursuant to private sale transactions without the need for any auctions.

    23.    For the avoidance of doubt, the Discrete Lease Sale Procedures do not apply to sale transactions to the extent the proposed purchase price exceeds $15 million.  Further, notwithstanding the foregoing, (a) authority to sell Underperforming Stores to "insiders," as that term is defined in Section 101 of the Bankruptcy Code, is neither contemplated by nor included in the relief requested herein, and (b) the Debtors and their advisors shall use commercially reasonable efforts to market all Underperforming Stores proposed to be sold in an effort to maximize the value received therefor.

**Approval of the Relief Requested Is Warranted
and in the Best Interests of the Debtors and Their Stakeholders**

**A.    The Discrete Lease Sale Procedures Are Sound Exercise of Business Judgment**

24.    The Court may grant the relief requested herein pursuant to sections 105 and 363 of the Bankruptcy Code.  Section 105 of the Bankruptcy Code provides, in relevant part, that "[t]he Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).  Section 363(b) of the Bankruptcy Code provides that a debtor "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1).

25.    To obtain Court approval to sell or otherwise dispose of Underperforming Stores under section 363(b) of the Bankruptcy Code, the Debtors need only show a legitimate business justification for the proposed action.  *See In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999) (requiring that debtor show a "sound business purpose" to justify its actions under section 363 of Bankruptcy Code); *see also In re Phoenix Steel Corp.*, 82 B.R. 334, 335–36 (Bankr. D. Del. 1987); *Comm. Of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.*), 722 F.2d 1063, 1070 (2d Cir. 1983); *Comm. Of Asbestos-Related Litigants v. Johns-Manville Corp. (In re Johns-Manville Corp.*), 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) ("Where the debtors articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtors' conduct") (citation omitted).  Moreover, if "the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct."  *In re Johns-Manville Corp.*, 60 B.R. at 616 (citation omitted); *see also In re Tower Air, Inc.*, 416 F.3d 229, 238 (3d Cir. 2005) (stating

that "[o]vercoming the presumptions of the business judgment rule on the merits is a near-Herculean task").

26.     Implementing the Discrete Lease Sale Procedures for the disposition of the Underperforming Stores is a sound exercise of the Debtors' business judgment. As described herein, the Underperforming Stores are non-profitable stores that are cost-prohibitive for the Debtors to continue to operate. As such, absent being sold, the Underperforming Stores will be liquidated and closed by the Debtors during these chapter 11 cases or shortly thereafter in furtherance of their goal to become a leaner, more profitable enterprise, and the associated leases either rejected at emergence from chapter 11 or scheduled to expire in the following months. In order for the Debtors' stakeholders to realize any value from the Underperforming Stores in the limited time available during these chapter 11 cases prior to the Debtors' anticipated exit from chapter 11, the Debtors seek authorization to consummate sales of the Underperforming Stores in accordance with the Discrete Lease Sale Procedures set forth above. These procedures are designed to give the Debtors the flexibility needed to monetize the Underperforming Stores expediently and efficiently, and in a manner that maximizes value for the benefit of all stakeholders. If sale transactions can be achieved, all parties in interest will benefit because the Debtors will avoid the costs of rejection damages and landlords will have a new tenant.

**B.      The Discrete Lease Sale Procedures Satisfy the Notice and Hearing Requirements under Section 363(b)(1)**

27.     The notice and hearing requirements contained in section 363(b)(1) are satisfied if appropriate notice and an opportunity for a hearing are given in light of the particular circumstances of the proposed sale. *See* 11 U.S.C. § 102(1)(A) (defining "after notice and a hearing" to mean such notice and opportunity for a hearing "as [are] appropriate in the particular circumstances"). Generally, Bankruptcy Rules 2002(a)(2) and 2002(i) require that a minimum of

twenty-one (21) days' notice of proposed sales of property outside the ordinary course of business be provided by mail "to the debtor, the trustee, all creditors and indenture trustees" and any committee appointed under section 1102 of the Bankruptcy Code.  However, courts are authorized to shorten the twenty-one (21) day notice period generally applicable to asset sales, or direct another method of giving notice, upon a showing of "cause."  *See* FED. R. BANKR. P. 2002(a)(2).  Moreover, courts are also authorized to limit notice of assets sales outside of the ordinary course of a debtor's business, even without a prior showing of cause, to any official committee appointed under section 1102 of the Bankruptcy Code and any creditor or equity holder requesting notice.  *See* FED. R. BANKR. P. 2002(i).

28.     The Debtors submit that sufficient cause exists to implement the modified noticed provisions proposed herein because these modified notice procedures will improve the efficiency of the Underperforming Store Sale Process and maximize the value of the Underperforming Stores to the Debtors' estates.  The Sale Notice Parties will receive notice of and a reasonable opportunity to object to any Lease Sale Transactions.  These notice provisions are reasonable and appropriate, particularly in light of the circumstances of these cases and the likely *de minimis* nature and value of the transactions.  Filing individual motions for each transaction would be burdensome and may not be achievable under the case timeline. Accordingly, the Debtors respectfully submit that cause has been shown to shorten the notice period set forth in Bankruptcy Rule 2002 for any Lease Sale Transaction entered into pursuant to the Discrete Lease Sale Procedures.

## C.     Private Sale Transaction are Appropriate under Bankruptcy Rule 6004

29.     Bankruptcy Rule 6004(f) permits a debtor to conduct a private sale pursuant to section 363 of the Bankruptcy Code. Specifically, Bankruptcy Rule 6004(f) provides that "[a]ll sales not in the ordinary course of business may be by private sale or by public

auction." FED. R. BANKR. P. 6004(f)(1) (emphasis added).    A debtor has broad discretion to determine the manner in which its assets are sold.  *See In re Alisa P'ship*, 15 B.R. 802, 802 (Bankr. D. Del 1981) (holding that manner of sale is within the debtor's discretion); *In re Bakalis*, 220 B.R. 525, 531-32 (Bankr. E.D.N.Y. 1998) (stating that debtor has authority to conduct public or private sales of estate property).

30.    Thus, in exercise of this discretion, a debtor may conduct a private sale if a good business reason exists.  *See, e.g., In re Dewey & Leboeuf LLP*, 2012 Bankr. LEXIS 5116, *14-15 (Bankr. S.D.N.Y. Nov. 1, 2012) (approving private sale where debtor established that a private sale would maximize the sale price because of the costs and delay associated with seeking court approval for bidding procedures and generally "established a good business reason" to proceed with a private sale); *In re Capmark Fin. Group, Inc*., 2010 Bankr. LEXIS 5348 (Bankr. D. Del. July 14, 2010) (approving a private sale where it was "supported by good business reasons and will serve the best interests of the Debtor"); *In re Pritam Realty, Inc*., 233 B.R. 619 (D.P.R. 1999) (upholding the bankruptcy court's approval of a private sale conducted by a chapter 11 debtor); *In re Condere Corp.*, 228 B.R. 615, 629 (Bankr. S.D. Miss. 1998) (authorizing private sale of debtors' tire company where "[d]ebtor has shown a sufficient business justification for the sale of the assets to the [p]urchaser"); *In re Wieboldt Stores, Inc*., 92 B.R. 309 (N.D. Ill. 1988) (affirming right of chapter 11 debtor to transfer assets by private sale).

31.    Good business reasons exist for allowing the Lease Sale Transactions to be conducted as private sales.  The Underperforming Stores have been actively marketed for months.  Public auctions for these discrete sales are unnecessary and would cause significant delay and likely dramatically reduce the number of Lease Sale Transactions that may be consummated in the limited time available during these prepackaged chapter 11 cases.  The

additional delay and continued involvement of estate professionals with this matter would require the Debtors' estates to incur additional administrative costs and transaction costs that are unnecessary in light of the Debtors' comprehensive prepetition marketing efforts.  Moreover, the Debtors have reviewed the sale transactions for the Sold Stores and these procedures with the advisors to the Initial Consenting Noteholders and have been advised that the Initial Consenting Noteholders, who will be the new owners of the reorganized Debtors, are supportive of the same.

**D.      The Discrete Lease Sale Procedures Satisfy the Requirements of Section 363(f) and Allow the Debtors to Sell Property Free and Clear**

32.      Section 363(f) of the Bankruptcy Code permits a debtor to sell property "free and clear of any interest in such property of an entity other than the estate" if any one of the following conditions is satisfied: (a) applicable non-bankruptcy law permits such a free and clear sale; (b) the holder of the interest consents; (c) the interest is a lien and the price at which the property is to be sold exceeds the value of all liens on the property; (d) the interest is in bona fide dispute; or (e) the holder of the interest could be compelled in a legal or equitable proceeding to accept a monetary satisfaction of its interest.  *See* 11 U.S.C. § 363(f); *see also In re Kellstrom Indus., Inc.*, 282 B.R. 787, 793 (Bankr. D. Del. 2002) ("Section 363(f) is written in the disjunctive, not the conjunctive, and if any of the five conditions are met, the debtor has the authority to conduct the sale free and clear of all liens"); *Citicorp Homeowners Servs. v. Elliot (In re Elliot)*, 94 B.R. 343, 345 (E.D. Pa. 1988) (same); *In re Healthco Int'l, Inc.*, 174 B.R. 174, 176 (Bankr. D. Mass. 1994) (interpreting section 363(f)(5) to mean "a payment constituting less than full payment of the underlying debt"); *Cheslock Bakker & Assocs., Inc. v. Kremer (In re Downtown Athletic Club)*, No. M-47 (JSM), 2000 WL 744126, at *3 (Bankr. S.D.N.Y. June 9, 2000) (holding free and clear sale under the debtor's plan of reorganization was binding on the debtor's creditors who received notice of the confirmation hearings).

33.     Assets encumbered by interests held by other parties will only be sold or otherwise disposed of pursuant to the Discrete Lease Sale Procedures if such interests are capable of monetary satisfaction or the holders of such interests consent to the proposed transactions.    Accordingly, the requirements of section 363(f) of the Bankruptcy Code are satisfied for any proposed Lease Sale Transaction free and clear of liens, claims or encumbrances.    Indeed, the Debtors anticipate that, to the extent there are liens, claims, or encumbrances on any of the Remaining Assets at the Underperforming Stores, the Debtors' prepetition secured lenders and all other known holders of any liens on such assets, have each consented or will each consent to selling the Underperforming Stores pursuant to the Discrete Lease Sale Procedures because such procedures provide the most effective, efficient, and time-sensitive approach to realizing the maximum value for the Underperforming Stores to the benefit of all stakeholders.    Furthermore, the Debtors propose that any such liens, claims, encumbrances and interests attach to the proceeds of the Remaining Assets, as applicable, with the same force, effect, and priority and subject to the same rights and defenses, if any, of the Debtors and of any party-in-interest with respect thereto.

E.    **The Assumption and Assignment Requirements Under the Transaction Approval Procedures Are In the Best Interests of the Estates**

34.     Section 365(a) of the Bankruptcy Code provides, in pertinent part, that a debtor, "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor."    11 U.S.C. § 365(a).    Section 365(b)(1) of the Bankruptcy Code, in turn, codifies the requirements for assuming an executory contract or unexpired lease of a debtor, providing, in relevant part, that:

> (b)(1) If there has been a default in an executory contract or unexpired lease of the debtor, the [debtor] may not assume such contract or lease unless, at the time of assumption of such contract or lease, the [debtor]—

(A) cures, or provides adequate assurance that the [debtor] will promptly cure, such default . . . ;

(B) compensates, or provides adequate assurance that the [debtor] will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and

(C) provides adequate assurance of future performance under such contract or lease.

11 U.S.C. § 365(b)(1).

35.    Similar to a debtor's proposed use, sale or lease of property outside of the ordinary course of business, courts apply the business judgment standard in determining whether to approve a debtor's decision to assume or reject an executory contract or unexpired lease pursuant to section 365(a) of the Bankruptcy Code. *See, e.g., In re Market Square Inn, Inc.*, 978 F.2d 116, 121 (3d Cir. 1992) (assumption or rejection of lease "will be a matter of business judgment by the bankruptcy court"); *In re HQ Global Holdings, Inc.*, 290 B.R. 507, 511 (Bankr. D. Del. 2003) (finding that debtor's decision to assume or reject executory contract is governed by business judgment standard and may only be overturned if decision is product of bad faith, whim, or caprice); *see also Group of Inst. Investors v. Chicago, Milwaukee, St. Paul & Pac. R.R. Co.*, 318 U.S. 523, 550 (1943) (noting "the question whether . . . [and on what terms a lease] should be assumed is one of business judgment"). The "business judgment" test in this context only requires that a debtor demonstrate that assumption or rejection of an executory contract or unexpired lease benefits the estate. *See Sharon Steel Corp. v. Nat'l Fuel Gas Distrib. Corp.*, 872 F.2d 36, 40 (3d Cir. 1989).

36.    Here, the extensive prepetition marketing and sales process conducted by the Debtors and Evercore and which process will continue postpetition will ensure that the Debtors receive the highest consideration possible in exchange for each unexpired lease or

21

executory contract assumed and assignment pursuant to a Lease Sale Transaction.  Pursuant to the Transaction Approval Procedures, the Sale Notice that the Debtors will send to counterparties will list the amounts necessary to cure any defaults pursuant to section 365(b)(1)(A) of the Bankruptcy Code and the counterparties will have opportunity to dispute the proposed cure amount.  The Debtors will also evaluate each assignee of an unexpired lease or executory contract to determine if such assignee has adequate financial capacity to perform its obligations under the lease pursuant to section 365(b)(1)(C) of the Bankruptcy Code and shall include a representation there is sufficient adequate assurance of future performance of each unexpired lease or executory contract on the Sale Notice.  The Debtors therefore believe that they will meet the requirements for assumption and assignment of any unexpired leases or executory contracts in connection with a Lease Sale Transaction through compliance with the Transaction Approval Procedures.

**F.      The Assumption and Assignment Requirements Under the Transaction Approval Procedures Comply with the Procedural Requirements of Bankruptcy Rule 6006**

37.    As a procedural matter, "[a] proceeding to assume, reject, or assign an executory contract or unexpired lease, other than as part of a plan, is governed by Rule 9014." FED. R. BANKR. P. 6006(a).  Bankruptcy Rule 9014 provides that:  "In a contested matter not otherwise governed by these rules, relief shall be requested by motion, and reasonable notice and opportunity for hearing shall be afforded the party against whom relief is sought."  FED. R. BANKR. P. 9014(a).   The notice and hearing requirements for contested matters under Bankruptcy Rule 9014 are satisfied if appropriate notice and an opportunity for hearing are given in light of the particular circumstances.  *See* 11 U.S.C. § 102(1)(A) (defining "after notice and a hearing" or a similar phrase to mean such notice and an opportunity for hearing "as [are] appropriate in the particular circumstances").   The Transaction Approval Procedures provide

notice to lease and contract counterparties and an opportunity to be heard at a hearing, and thus satisfy the requirement of Bankruptcy Rules 6006(a) and 9014.

<b><u>Reservation of Rights</u></b>

38.    Nothing contained herein is intended or shall be construed as (a) an admission as to the validity of any claim against the Debtors; (b) a waiver of the Debtors' or any appropriate party in interest's rights to dispute the amount of, basis for, or validity of any claim against the Debtors; or (c) a waiver of any claims or causes of action that may exist against any creditor or interest holder.  Likewise, if the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended to be and should not be construed as an admission to the validity of any claim or a waiver of the Debtors' rights to dispute such claim subsequently.

<b><u>Waiver of Bankruptcy Rules 6004(a), (h), and 6006(d)</u></b>

39.    To implement the foregoing successfully, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) (to the extent such requirements are deemed to apply and are inconsistent with the notice requirements set forth in the Discrete Lease Sale Procedures) and the fourteen (14) day stay requirements under Bankruptcy Rules 6004(h) and 6006(d).

40.    As explained above and in the Carney Declaration and the Goldstein Declaration, the Debtors must be able to proceed quickly in order to continue to market and obtain Court approval of as many Lease Sale Transactions as possible in the limited time available during these prepackaged chapter 11 cases to maximize the value of the Underperforming Stores.  Accordingly, the Debtors request that any order approving the relief requested in this Motion be effective immediately upon entry and that the fourteen-day stay imposed by Bankruptcy Rules 6004(h) and 6006(d) be waived.

23

**Notice**

41.     Notice of this Motion will be provided to (a) the Office of the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19899 (Attn:  Benjamin Hackman); (b) the holders of the thirty (30) largest unsecured claims against the Debtors on a consolidated basis; (c) counsel to the Initial Consenting Noteholders, (i) Morrison & Foerster LLP, 250 West 55th Street, New York, NY 10019 (Attn: Dennis L. Jenkins, Esq. and Brett H. Miller, Esq.) and (ii) Drinker Biddle & Reath LLP, 222 Delaware Avenue, Wilmington, DE 19801 (Attn: Steven K. Kortanek, Esq., Robert K. Malone, Esq., and Joseph N. Argentina, Jr., Esq.), (d) counsel to the Sponsors, King & Spalding LLP, 1180 Peachtree Street NE, Atlanta, GA 30309 (Attn: W. Austin Jowers, Esq. and Paul K. Ferdinands, Esq.); (e) counsel to the ABL Facility Agent and Deutsche Bank Securities Inc. in its capacity as Lead Arranger under the Exit Term Loan Facility, White & Case LLP, 1221 Avenue of the Americas, New York, NY 10020 (Attn: Andrew C. Ambruoso, Esq., David Bilkis, Esq. and Elizabeth Feld, Esq.); (f) counsel to the Exit ABL Facility Agent and the Exit Term Loan Facility Agent, White & Case LLP, Southeast Financial Center, 200 South Biscayne Boulevard, Suite 4900, Miami, FL 33131 (Attn:  Eric Klar, Esq.); (g) counsel to the Secured Notes Trustee, Pryor Cashman LLP, 7 Times Square, New York, NY 10036 (Attn: Seth H. Lieberman, Esq. and Patrick Sibley, Esq.); (h) counsel to the Unsecured Notes Trustee, Kelley Drye & Warren LLP, 101 Park Avenue, New York, NY 10178 (Attn:  James S. Carr, Esq., Benjamin D. Feder, Esq. and Pamela Bruzzese-Szczygiel, Esq.); (i) counsel to Wells Fargo Bank, National Association, in its capacity as Treasury Bank, Choate Hall & Stewart LLP, Two International Place, Boston, MA 02110 (Attn:  Kevin J. Simard, Esq.); (j) the Securities and Exchange Commission; (k) the Internal Revenue Service; (l) the United States Attorney's Office for the District of Delaware;

and (m) any other party entitled to notice pursuant to Local Rule 9013-1(m) (the "**Notice Parties**").

42.    The Debtors respectfully submit that no further notice is required.  No previous request for the relief sought herein has been made by the Debtors to this or any other court.

WHEREFORE the Debtors respectfully request entry of the Proposed Order granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

Dated: March 27, 2018
      Wilmington, Delaware

*/s/ Daniel J. DeFranceschi*
RICHARDS, LAYTON & FINGER, P.A.
Daniel J. DeFranceschi (No. 2732)
Paul N. Heath (No. 3704)
Amanda R. Steele (No. 5530)
One Rodney Square
920 North King Street
Wilmington, Delaware  19801
Telephone:  (302) 651-7700
Facsimile:   (302) 651-7701

-and-

WEIL, GOTSHAL & MANGES LLP
Ray C. Schrock, P.C.
Matthew S. Barr
Sunny Singh
767 Fifth Avenue
New York, New York  10153
Telephone:  (212) 310-8000
Facsimile:   (212) 310-8007

*Proposed Attorneys for Debtors
and Debtors in Possession*

## Exhibit A

### Sold Stores

| Store No. | Address | City | State | Zip |
|---|---|---|---|---|
| 209 | 701 Nw 99Th Ave | Pembroke Pines | FL | 33024 |
| 244 | 6301 County Line Rd. | Miramar | FL | 33023 |
| 348 | 7139 W Broward Blvd | Plantation | FL | 33317 |
| 405 | 2220 Bessemer Road | Birmingham | AL | 35208 |
| 410 | 1009 Martin St. | Pell City | AL | 35125 |
| 434 | 2495 Hwy 431 | Anniston | AL | 36206 |
| 462 | 4920 Hwy 78 West | Oxford | AL | 36203 |
| 471 | 1130 By Pass | Andalusia | AL | 36420 |
| 490 | 25405 Perdido Blvd | Orange Beach | AL | 36561 |
| 512 | 600 E. Church St. | Atmore | AL | 36502 |
| 525 | 815 South. Pelham Road | Jacksonville | AL | 36265 |
| 586 | Hwy 59 And 16Th Avenue | Gulf Shores | AL | 36542 |
| 1345 | 21951 D Hwy 59 | Robertsdale | AL | 36567 |
| 1456 | 1104 East Main Street | New Iberia | LA | 70560 |
| 1459 | 1411 The Boulevard | Rayne | LA | 70578 |
| 1467 | 13555 Old Hammond Hwy. | Baton Rouge | LA | 70816 |
| 1490 | 2004 North Parkerson Ave | Crowley | LA | 70526 |
| 1549 | 924 Rees Street | Breaux Bridge | LA | 70517 |
| 1558 | 2210 Veterans Memorial Dr | Abbeville | LA | 70510 |
| 1559 | 204 Northwest Blvd. | Franklin | LA | 70538 |
| 1570 | 1800 W. Laurel | Eunice | LA | 70535 |
| 1572 | 420 Hospital Road | New Roads | LA | 70760 |
| 1606 | 75 S. Valdosta Rd | Lakeland | GA | 31635-6652 |
| 1609 | 506F Spaulding Rd. | Montezuma | GA | 31063 |
| 1615 | 1209 1St Ave. Southeast | Moultrie | GA | 31768 |
| 1618 | 400 West 4Th St. | Adel | GA | 31620 |
| 1622 | 1016 N. Main St. | Pearson | GA | 31642 |
| 1643 | 17932 Main St N Ste 6 | Blountstown | FL | 32424 |
| 1668 | 528 N. Church Street | Homerville | GA | 31634 |
| 2628 | 170 Beacon Street | Laurel | MS | 39440 |
| 5280 | 809 W. Greenwood Street | Abbeville | SC | 29620 |
| 5751 | 630 Skylark Dr | Charleston | SC | 29407 |
| 5764 | 136 S Main St | Clover | SC | 29710 |

**<u>Exhibit B</u>**

**Key Terms of Lease Sale Agreements
for Sold Stores**

| Seller(s) | Purchaser | Store No(s). | Store Address | Assets Acquired | Purchase Price | Deposit Received | Outside Closing Date |
|---|---|---|---|---|---|---|---|
| Winn-Dixie Montgomery Leasing, LLC | Brookshire Grocery Company | 1456 | 1104 East Main Street, New Iberia, LA 70560 | 1. Leases<br><br>2. Permits/Licenses<br><br>3. Manufacturer, supplier or contractor warranties or guaranties<br><br>4.Inventory<br><br>5. Pharmacy Records<br><br>6. Goodwill<br><br>7. Rights associated with the Covenant Not to Compete<br><br>8. FF&E | $8,500,000.00 | $850,000.00 | April 9, 2018 |
| | | 1459 | 1411 The Boulevard, Rayne, LA 70578 | | | | |
| | | 1490 | 2004 North Parkerson Ave, Crowley, LA 70526 | | | | |
| | | 1549 | 924 Rees Street, Breaux Bridge, LA 70517 | | | | |
| | | 1558 | 2210 Veteran Memorial Drive, Abbeville, LA 70510 | | | | |
| | | 1559 | 204 Northwest Blvd., Franklin, LA 70538 | | | | |
| | | 1570 | 1800 W. Laurel, Eunice, LA 70535 | | | | |
| | | 1572 | 420 Hospital Road, New Roads, LA 70760 | | | | |

| Seller(s) | Purchaser | Store No(s). | Store Address | Assets Acquired | Purchase Price | Deposit Received | Outside Closing Date |
|---|---|---|---|---|---|---|---|
| Winn-Dixie Stores Leasing, LLC | Ram Distributors, Inc. | 209 | 701 NW 99th Avenue, Pembroke Pines, FL 33024 | 1. Lease<br><br>2. Permits/Licenses<br><br>3. FF&E | $600,000.000 | $60,000.00 | April 30, 2018 |
| Winn-Dixie Montgomery Leasing, LLC and<br><br>Samson Merger Sub, LLC | Valdosta Fresh for Less, Inc. | 1615 | 1209 1st Avenue, Southeast, Moultrie, GA 31768 | 1. Lease<br><br>2. Permits/Licenses<br><br>3. FF&E | $570,000.00 | $57,000.00 | April 30, 2018 |
| Winn-Dixie Stores Leasing, LLC,<br><br>Winn-Dixie Raleigh Leasing, LLC, and<br><br>Samson Merger Sub, LLC | Associated Wholesale Grocers, Inc. | 512<br><br>490<br><br>1643 | 600 East Church Street, Atmore, AL 36502<br><br>25405 Perdido Blvd., Orange Beach, AL 36561<br><br>17932 Main St. North, Suite 6, Blountstown, FL 32424 | 1. Leases<br><br>2. Permits/Licenses<br><br>3. Inventory<br><br>4. FF&E | $505,000,000 | $50,500.00 | April 30, 2018 |
| Winn-Dixie Montgomery Leasing, LLC and<br><br>Samson Merger Sub, LLC | Reynolds IGA Foodliner, Inc. | 1618 | 400 West 4th Street, Adel, GA 31620 | 1. Fee Simple Property<br><br>2. Leases<br><br>3. Permits/Licenses<br><br>4. FF&E | $500,000.00 | $50,000.00 | April 30, 2018 |

| Seller(s) | Purchaser | Store No(s). | Store Address | Assets Acquired | Purchase Price | Deposit Received | Outside Closing Date |
|---|---|---|---|---|---|---|---|
| Winn-Dixie Montgomery Leasing, LLC and<br><br>Samson Merger Sub, LLC | Eagle Foods, Inc. | 434 | 2495 Highway 431, Anniston, AL 36206 | 1. Lease<br><br>2. Permits/Licenses<br><br>3. FF&E | $395,000.00 | $39,500.00 | April 30, 2018 |
| Winn-Dixie Montgomery Leasing, LLC and<br><br>Samson Merger Sub, LLC | Manning, Inc. | 1345 | 21951D Highway 59, Robertsdale, AL 36567 | 1. Lease<br><br>2. Permits/Licenses<br><br>3. FF&E | $370,000.00 | $37,000.00 | April 30, 2018 |
| Winn-Dixie Montgomery Leasing, LLC and<br><br>Samson Merger Sub, LLC | Manning, Inc. | 586 | Highway 59 and 16th Avenue, Gulf Shores, AL 36542 | 1. Lease<br><br>2. Permits/Licenses<br><br>3. FF&E | $370,000.00 | $37,000.00 | April 30, 2018 |

| Seller(s) | Purchaser | Store No(s). | Store Address | Assets Acquired | Purchase Price | Deposit Received | Outside Closing Date |
|---|---|---|---|---|---|---|---|
| Winn-Dixie Montgomery Leasing, LLC | Mitchell Grocery Corporation | 525 | 815 South Pelham Road, Jacksonville, AL 36265 | 1. Leases | $300,000.00 | $30,000.00 | May 30, 2018 |
| | | | | 2. Permits/Licenses | | | |
| | | 462 | 4920 Highway 78 West, Oxford, AL 36203 | 3. Inventory | | | |
| | | | | 4. FF&E | | | |
| | | 410 | 1009 Martin Street, Pell City, AL 35125 | 5. Blueprints, drawings, including CAD files, literature, user manuals, and technical information related to the Leased Premises and the FF&E | | | |
| Winn-Dixie Stores Leasing, LLC | Food Fair Wholesale Fresh Market, LLC | 244 | 6301 County Line Road, Miramar, FL 33023 | 1. Leases | $250,000.00 | $50,000.00 | April 30, 2018 |
| | | | | 2. Permits/Licenses | | | |
| | | 348 | 7139 W. Broward Blvd., Plantation, FL 33317 | 3. FF&E | | | |
| Winn-Dixie Montgomery Leasing, LLC | SVFoods Avondale LLC d/b/a Shoppers Value Foods | 1467 | 13555 Old Hammond Highway, Baton Rouge, LA 70816 | 1. Leases | $236,173.00 | $23,617.30 | May 30, 2018 |
| | | | | 2. Subleases (Store 2628) | | | |
| | | 2628 | 170 Beacon Street, Laurel, MS 39440 | 3. FF&E | | | |

| Seller(s) | Purchaser | Store No(s). | Store Address | Assets Acquired | Purchase Price | Deposit Received | Outside Closing Date |
|---|---|---|---|---|---|---|---|
| Winn-Dixie Montgomery Leasing, LLC and<br><br>Samson Merger Sub, LLC | Fresh Foods Outlet, LLC | 471 | 1130 By-Pass, Andalusia, AL 36420 | 1. Lease<br><br>2. Permits/Licenses<br><br>3. FF&E | $170,000.00 | $10,000.00 | April 30, 2018 |
| Winn-Dixie Montgomery Leasing, LLC and<br><br>Samson Merger Sub, LLC | Buy-Lo Quality Food Stores, Inc. | 405 | 2220 Bessemer Road, Birmingham, AL 35208 | 1. FF&E | $120,000.00 | $12,000.00 | April 30, 2018 |
| BI-LO, LLC | Gillis Enterprises, LLC | 5764 | 136 South Main Street, Clover, SC 29710 | 1. Lease<br><br>2. Permits/Licenses<br><br>3. Inventory<br><br>4. FF&E | $75,000.00 | $7,500.00 | April 30, 2018 |
| BI-LO, LLC | Gillis Enterprises, LLC | 5280 | 809 West Greenwood Street, Abbeville, SC 29620 | 1. Lease<br><br>2. Permits/Licenses<br><br>3. Inventory<br><br>4. FF&E | $75,000.00 | $7,500.00 | April 30, 2018 |

5

| Seller(s) | Purchaser | Store No(s). | Store Address | Assets Acquired | Purchase Price | Deposit Received | Outside Closing Date |
|---|---|---|---|---|---|---|---|
| BI-LO, LLC | PW Grocers, LLC | 5751 | 630 Skylark Drive, Charleston, SC 29407 | 1. Lease<br><br>2. Permits/Licenses<br><br>3. Inventory<br><br>4. FF&E | $75,000.00 | $7,500.00 | April 30, 2018 |
| Samson Merger Sub, LLC | Lakeland Grocery, LLC | 1606 | 75 South Valdosta Road, Lakeland, GA 31635 | 1. Lease<br><br>2. Permits/Licenses<br><br>3. Inventory<br><br>4. FF&E | $75,000.00 | $7,500.00 | April 30, 2018 |
| Samson Merger Sub, LLC | Pearson Grocery, LLC | 1622 | 1016 North Main Street, Pearson, GA 31642 | 1. Lease<br><br>2. Permits/Licenses<br><br>3. Inventory<br><br>4. FF&E | $75,000.00 | $7,500.00 | April 30, 2018 |
| Samson Merger Sub, LLC | Homerville Grocery, LLC | 1668 | 528 North Church Street, Homerville, GA 31634 | 1. Lease<br><br>2. Permits/Licenses<br><br>3. Inventory<br><br>4. FF&E | $75,000.00 | $7,500.00 | April 30, 2018 |

| Seller(s) | Purchaser | Store No(s). | Store Address | Assets Acquired | Purchase Price | Deposit Received | Outside Closing Date |
|---|---|---|---|---|---|---|---|
| Winn-Dixie Montgomery Leasing, LLC and<br><br>Samson Merger Sub, LLC | Reynolds IGA Foodliner, Inc. | 1609 | 506F Spaulding Road, Montezuma, GA 31063 | 1. Lease<br><br>2. Permits/Licenses<br><br>3. FF&E | $52,000.00 | $5,200.00 | April 30, 2018 |

**<u>Exhibit C</u>**

**Proposed Order**

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

```
----------------------------------------------------------- x
In re:                                          :
                                                :          Chapter 11
                                                :
SOUTHEASTERN GROCERS, LLC, et al.               :          Case No. 18– _____ (     )
                                                :
            Debtors.¹                           :          (Jointly Administered
                                                :          Re:  Docket No.
----------------------------------------------------------- x
```

## <u>ORDER APPROVING DISCRETE LEASE SALE PROCEDURES</u>

Upon the motion (the "**Motion**")² of Southeastern Grocers, LLC and its affiliated

debtors in the above-captioned chapter 11 cases, as debtors and debtors in possession

(collectively, the "**Debtors**"), pursuant to sections 105(a), 363, and 365 of title 11 of the United

States Code (the "**Bankruptcy Code**"), Rules 2002, 6004 and 6006 of the Federal Rules of

Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rules 2002-1 and 6004-1 of the Local

Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the

District of Delaware (the "**Local Rules**") for an order approving the Discrete Lease Sale

Procedures (as described below), all as more fully set forth in the Motion; and the Court having

jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157

---

¹ The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Southeastern Grocers, LLC (5190); ARP Ballentine LLC (6936); ARP Chickamauga LLC (9515); ARP Hartsville LLC (7906); ARP James Island LLC (9163); ARP Moonville LLC (0930); ARP Morganton LLC (4010); ARP Winston Salem LLC (2540); BI-LO Finance Corp. (0498); BI-LO Holding Finance, Inc. (9227); BI-LO Holding Finance, LLC (1412); BI-LO Holding, LLC (5611); BI-LO, LLC (0130); Dixie Spirits Florida, LLC (6727); Dixie Spirits, Inc. (2359); Opal Holdings, LLC (2667); Samson Merger Sub, LLC (4402); Winn-Dixie Logistics, LLC (2949); Winn-Dixie Montgomery Leasing, LLC (6899); Winn-Dixie Montgomery, LLC (2119); Winn-Dixie Properties, LLC (7105); Winn-Dixie Raleigh Leasing, LLC (6812); Winn-Dixie Raleigh, LLC (0665); Winn-Dixie Stores, Inc. (4290); Winn-Dixie Stores Leasing, LLC (7019); Winn-Dixie Supermarkets, Inc. (8837); and Winn-Dixie Warehouse Leasing, LLC (6709).  The Debtors' mailing address is 8928 Prominence Parkway, #200, Jacksonville, Florida 32256.

² Capitalized terms used herein but not otherwise defined shall have the meanings ascribed to such terms in the Motion.

and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012; and consideration of the Motion and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided to the Notice Parties; and such notice having been adequate and appropriate under the circumstances, and it appearing that no other or further notice need be provided; and the Court having reviewed the Motion; and the Court having held a hearing to consider the relief requested in the Motion (the "**Hearing**"); and upon the Carney Declaration and the Goldstein Declaration, each filed contemporaneously with the Motion, and the record of the Hearing; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and it appearing that the relief requested in the Motion and granted herein is in the best interests of the Debtors, their estates, creditors, and all parties in interest; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT**

1.      The Motion is granted to the extent set forth herein.

2.      The Discrete Lease Sale Procedures, as set forth in the Motion, are hereby approved, established in the Debtors' chapter 11 cases, and incorporated by reference in their entirety; provided, that the Discrete Lease Sale Procedures shall not apply to any sale to "insiders," as that term is defined in section 101 of the Bankruptcy Code or any transaction involving aggregate cash consideration to the Debtors of in excess of $15 million.

3.      The Sale Notice, in substantially the form attached hereto as **<u>Exhibit 1</u>**, is hereby approved.

4.      All buyers shall take assets sold or otherwise disposed of by the Debtors pursuant to the Discrete Lease Sale Procedures approved by this Order "as is" and "where is," without any representations or warranties from the Debtors as to the quality or fitness of such assets for either their intended or any particular purpose.

5.      All buyers shall take assets sold or otherwise disposed of by the Debtors pursuant to the Discrete Lease Sale Procedures approved by this Order free and clear of liens, claims, and encumbrances, pursuant to section 363(f) of the Bankruptcy Code, and all such liens, claims, and encumbrances shall attach to the proceeds of the sale or disposition.

6.      The fourteen (14) day stay of Bankruptcy Rules 6004(h) and 6006(d) is hereby waived, and, notwithstanding Bankruptcy Rules 6004(h) or 6006(d) or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

7.      All Lease Sale Transactions as to which no objection is timely filed pursuant to Section d.4 of the Discrete Lease Sale Procedures (each, an "**Unopposed Lease Sale Transaction**"), including the assumption and assignment of any executory contracts or unexpired leases in connection therewith, shall be deemed authorized and approved pursuant to the terms of this Order and no further or additional waivers of the fourteen (14) day stay of Bankruptcy Rules 6004(h) or 6006(d) shall be required for the Debtors to consummate such Lease Sale Transaction, subject to compliance with the notice and other procedures set forth in the Discrete Lease Sale Procedures.

8.      All buyers of assets pursuant to an Unopposed Lease Sale Transaction consummated pursuant to the Discrete Lease Sale Procedures approved by this Order are and shall be deemed to have purchased such assets in "good faith" within the meaning of section

363(m) of the Bankruptcy Code and, as such, are entitled to all protections afforded thereby in the event of a reversal or modification on appeal of such transaction.

9.    With respect to all Unopposed Lease Sale Transactions consummated pursuant to this Order, this Order shall be sole and sufficient evidence of the transfer of title to any particular purchaser, and an Unopposed Lease Sale Transaction consummated pursuant to the Discrete Lease Sale Procedures approved by this Order shall be binding upon and shall govern the acts of all persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the property sold or otherwise disposed of pursuant to this Order, including without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, administrative agencies, governmental departments, secretaries of state, and federal, state, and local officials, and each of such persons and entities is hereby directed to accept this Order as sole and sufficient evidence of such transfer of title and shall rely upon this Order in consummating the transactions contemplated hereby.

10.    Nothing in this Order shall be construed to prevent the Debtors, in their sole discretion, from seeking this Court's approval at any time of any proposed sale or disposition of any of their stores, leases or related assets after notice and an opportunity for a hearing.

11.    Nothing in the Discrete Lease Sale Procedures shall relieve the Debtors of their obligations under any applicable law.

12.    The time periods required by the Bankruptcy Rules and the Local Rules for notice of any sale of any of the Debtors' stores pursuant to the Discrete Lease Sale

Procedures (including certain leases and related assets), or any procedures in connection therewith, are hereby shortened as set forth in the Discrete Lease Sale Procedures.

13.     Under the circumstances of these chapter 11 cases, notice of the Motion is adequate under Bankruptcy Rule 6004(a).

14.     The Debtors are authorized to take all actions necessary to implement the relief granted in this Order.

15.     The Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, and/or enforcement of this Order.

Dated: _____, 2018
        Wilmington, Delaware

                                    _____
                                    THE HONORABLE _____
                                    UNITED STATES BANKRUPTCY JUDGE

**<u>Exhibit 1</u>**

**Sale Notice**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

---------------------------------------------------------------- x
*In re:*                                                     :
                                                             :          **Chapter 11**
                                                             :
**SOUTHEASTERN GROCERS, LLC,** *et al.*                      :          **Case No. 18– _____ (      )**
                                                             :
Debtors.[1]                                                  :          **(Joint Administration Requested)**
                                                             :
---------------------------------------------------------------- x

## NOTICE OF SALE

      **PLEASE TAKE NOTICE** that, on [____], 2018 (the "**Petition Date**"), Southeastern Grocers, LLC and its affiliated debtors in the above-captioned chapter 11 cases, as debtors and debtors in possession (collectively, the "**Debtors**"), each commenced with the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**") a voluntary case under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**").

      **PLEASE TAKE FURTHER NOTICE** that, on [____], 2018, the Bankruptcy Court entered the *Order Approving Discrete Lease Sale Procedures* [Docket No. ___] (the "**Discrete Procedures Order**"), whereby the Bankruptcy Court authorized the Debtors to, among other things, sell certain underperforming stores and assign associated leases (the "**Stores**") free and clear of all liens, claims, encumbrances, and interests (collectively, the "**Encumbrances**"). An electronic copy of the Discrete Procedures Order can found at: [_____].

      **PLEASE TAKE FURTHER NOTICE** that, in accordance with the Discrete Procedures Order, the Debtors hereby provide notice of their intent to enter into a Lease Sale Transaction with respect to certain assets (the "**Assets**") with [_____] (the "**Counterparty**") pursuant to that certain Lease Sale Agreement, dated [_____], 2018,

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Southeastern Grocers, LLC (5190); ARP Ballentine LLC (6936); ARP Chickamauga LLC (9515); ARP Hartsville LLC (7906); ARP James Island LLC (9163); ARP Moonville LLC (0930); ARP Morganton LLC (4010); ARP Winston Salem LLC (2540); BI-LO Finance Corp. (0498); BI-LO Holding Finance, Inc. (9227); BI-LO Holding Finance, LLC (1412); BI-LO Holding, LLC (5611); BI-LO, LLC (0130); Dixie Spirits Florida, LLC (6727); Dixie Spirits, Inc. (2359); Opal Holdings, LLC (2667); Samson Merger Sub, LLC (4402); Winn-Dixie Logistics, LLC (2949); Winn-Dixie Montgomery Leasing, LLC (6899); Winn-Dixie Montgomery, LLC (2119); Winn-Dixie Properties, LLC (7105); Winn-Dixie Raleigh Leasing, LLC (6812); Winn-Dixie Raleigh, LLC (0665); Winn-Dixie Stores, Inc. (4290); Winn-Dixie Stores Leasing, LLC (7019); Winn-Dixie Supermarkets, Inc. (8837); and Winn-Dixie Warehouse Leasing, LLC (6709). The Debtors' mailing address is 8928 Prominence Parkway, #200, Jacksonville, Florida 32256.

a copy of which is attached hereto as **Exhibit A** (the "**Agreement**").[2]  The material terms of the Agreement are as follows[3]:

- **Description of Assets**:   The Assets consist of the lease(s) [and sublease(s)] referenced below (the "**Lease(s)**") [and the additional assets referenced below (the "**Additional Assets**")]:

| Lease(s) | |
|---|---|
| Landlord(s) Name(s) and Address(es) | |
| Store Number(s) and Banner(s) | |
| Real Property Address(es) | |
| Additional Assets | |
| Description | |
| Location | |

- **Purchase Price**.  The Purchaser has agreed to pay a purchase price of $_____ for the Assets.

- **Economic Terms and Conditions of the Proposed Transaction**.   The Debtors propose to sell or dispose of the Assets to Counterparty on an "as is" basis, free and clear of all liens, claims, encumbrances and other interests therein, pursuant to section 363(f) of the Bankruptcy Code (the "**Transaction**").

- **Liens and Encumbrances on and Other Interests in the Assets**.  The Debtors are aware of remaining liens and/or encumbrances on the Assets granted under: _____.   To the extent that any party has liens and encumbrances on or interests in the Assets, the Debtors believe that any such liens, encumbrances or interests would be subject to monetary satisfaction in accordance with section 363(f)(5) of the Bankruptcy Code, and such liens, encumbrances or interests will attach to the proceeds of the sale in their same order of priority.

     **PLEASE TAKE FURTHER NOTICE** that, in connection with the Transaction, the Debtors seek to assume and assign the Lease(s) to Counterparty.  Pursuant to the Discrete Procedures Order, the Debtors hereby provide the following Assumption and Assignment Information:

| Proposed Effective Date of Assumption and Assignment | |
|---|---|

---

[2] Capitalized terms used herein but not otherwise defined shall have the meanings ascribed to them in the Discrete Procedures Order or the Agreement, as applicable.

[3] The descriptions contained herein of the Agreement and the Assets are qualified in their entirety by the terms of the Agreement.  In the event of any inconsistencies between the provisions of the Agreement and the general descriptions contained herein, the Agreement shall control.

| Proposed Effective Date of Assumption and Assignment | |
| Proposed Cure Amount | |
| Counterparty's Name, Address, Telephone Number and Email Address | |

**PLEASE TAKE FURTHER NOTICE** that the Debtors hereby certify that, contemporaneously with the filing of this Notice, the Debtors have caused to be served by email and overnight mail on the Cure Notice Parties demonstrating the Counterparty's ability to comply with the requirements of adequate assurance of future performance under section 365(f)(2)(B) of the Bankruptcy Code and, if applicable, section 365(b)(3) of the Bankruptcy Code, including, without limitation, Counterparty's financial wherewithal and willingness to perform under the Lease(s) (such information, the "**Adequate Assurance Information**"). The Adequate Assurance Information is being provided to the Cure Notice Parties on a confidential basis. To the extent any of the Cure Notice Parties wish to disclose this non-public information in an objection filed with the Bankruptcy Court, such Cure Notice Parties must file such objection under seal and serve unredacted versions of such objections upon the Debtors and the Court. Pursuant to the Discrete Procedures Order, the Cure Notice Parties are not required to obtain separate authority from the Bankruptcy Court to file the objection under seal.

**PLEASE TAKE FURTHER NOTICE** that any objection to the proposed Transaction, (an "**Objection**"), including to the assumption and assignment of the Lease(s) in connection therewith and/or the proposed cure amount(s) set forth in this Notice, must: (i) be in writing; (ii) state with specificity the nature of the objection; and (iii) be filed with the Bankruptcy Court and served on (a) Southeastern Grocers, LLC, 8928 Prominence Parkway, #200, Jacksonville, FL 32256 (Attn: M. Sandlin Grimm, Esq.); (b) proposed counsel to the Debtors, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 (Attn: Ray C. Schrock, P.C., Matthew S. Barr, Esq., and Sunny Singh, Esq.); and (c) Evercore Partners LLC, 55 East 52nd Street, New York, NY 10055 (Attn: Stephen R. Goldstein and Elliot A. Ross) (the "**Debtor Notice Parties**"), so that it is actually received by the Debtor Notice Parties no later than **seven (7) calendar days after the date of service of this Sale Notice** (the "**Objection Deadline**").

**PLEASE TAKE FURTHER NOTICE** that, if any Objections are timely filed and served by the Objection Deadline and the Debtors are unable to negotiate a consensual resolution with the objecting parties, the Objections will be deemed a request for a hearing and the Transaction will be considered at a hearing before the Bankruptcy Court.

**PLEASE TAKE FURTHER NOTICE that, if no Objections are timely filed with the Bankruptcy Court and served by the Objection Deadline, (i) the Transaction, including the assumption and assignment of the Lease(s) in connection therewith will be deemed fully and finally authorized by the Court under the terms of the Discrete Procedures Order and no further notice or Court approval to consummate the Transaction shall be required or necessary; (ii) the proposed cure amount(s) set forth in this Notice shall be binding upon each non-Debtor party to the Lease(s) for all purposes in the**

3

Debtors' chapter 11 cases and will constitute a final determination of the assumption and no additional cure amounts shall be due; (iii) each non-Debtor party to the Lease(s) will be deemed to have received adequate assurance of future performance; and (iv) the effective date of the such assumption and assignment of the Lease(s) will be the effective date of the Transaction.

**<u>Exhibit A</u>**

**Agreement**